UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

JAVON HEARN,                                                                              Petitioner,

v.                                                                    Civil Action No. 3:18-cv-490-DJH-HBB

DEEDRA HART, Warden,                                                                     Respondent.

\* \* \* \* \*

**MEMORANDUM OPINION AND ORDER**

Javon Hearn petitioned for a writ of habeas corpus under 28 U.S.C. § 2254. (Docket No. 1) He subsequently filed a corrected petition. (D.N. 5-1; *see* D.N. 8) Respondent Warden DeEdra Hart[1] opposed the corrected petition. (D.N. 16) The Court referred the matter to Magistrate Judge H. Brent Brennenstuhl for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (D.N. 23) Judge Brennenstuhl issued his Findings of Fact, Conclusions of Law, and Recommendation on February 17, 2021, recommending that the corrected petition be denied. (D.N. 24) Following extensions of the deadline, Javon Hearn timely objected. (D.N. 29; *see* D.N. 26) For the reasons explained below, the Court will overrule the objections and adopt Judge Brennenstuhl's Findings of Fact, Conclusions of Law, and Recommendation, denying the corrected petition.

I.

Around 1 p.m. on August 27, 2002, David Kiphart, Jr. was found murdered in Green Meadows Cemetery in Louisville, Kentucky.[2]  (D.N. 16-2, PageID # 342)  A witness saw a car

---

[1] The former warden of the Kentucky State Penitentiary, Randy White, was replaced by Warden DeEdra Hart as the respondent in this matter on April 29, 2019. (D.N. 11)
[2] Javon Hearn objects to the magistrate judge's summary of facts insofar as "it omits facts established during [his] post-conviction" proceedings. (D.N. 29, PageID # 1018) The Court will address this objection below, but for purposes of this petition the Court "take[s] the facts as the

1

that belonged to Gary Hearn, Javon Hearn's half-brother, speeding out of the cemetery around the time of the murder, which occurred between noon and 1 p.m. (*Id.*) After his arrest, Gary gave two statements to law enforcement officers, explaining that he was, by chance, in the area around the cemetery at the time of the murder but did not see Kiphart's body. (*Id.*) Gary also stated that he saw Javon driving Kiphart's car after the murder. (*Id.*) According to Gary, Javon told Gary that he accidentally shot Kiphart when Javon was trying to rob him. (*Id.*) Gary told officers that Javon stripped Kiphart's car and asked Gary to hold Kiphart's stereo, CDs, and cell phone. (*Id.*, PageID # 343) Officers later found Gary in possession of these items. (*Id.*) Upon questioning, Javon told the officers that on the day of Kiphart's murder he slept until 3:30 p.m., played video games with his brother, then went to his girlfriend's house around 8:30 p.m. (*Id.*)

Javon and Gary were ultimately charged with Kiphart's murder. (*Id.*, PageID # 344) The Commonwealth tried Gary first. (*Id.*) At Gary's trial, the Commonwealth argued that though Gary may not have been the person who actually killed Kiphart, both Gary and Javon were complicit in the murder. (*Id.*, PageID # 344–45) The jury convicted Gary of facilitation to murder, first-degree robbery, and tampering with physical evidence. (*Id.*, PageID # 345) The trial court sentenced him to five years each as to facilitation to murder and tampering with physical evidence, to be served consecutively. (*Id.*) The trial court did not sentence Gary on his robbery conviction, however. (*Id.*) Instead, Gary entered into an agreement with the Commonwealth to testify at Javon's trial in exchange for a ten-year sentence as to his robbery conviction, to run concurrently with his two other sentences. (*Id.*, PageID # 345–46)

---

state courts found them." *Smith v. Winn*, 714 F. App'x 577, 578 (6th Cir. 2018) (citing 28 U.S.C. § 2254(e)(1); *Cullen v. Pinholster*, 563 U.S. 170, 181–82 (2011)).

Gary then gave the police a new statement, telling them that he regularly sold drugs near the cemetery where Kiphart's body was found. (*Id.*, PageID # 346) Gary told officers that on the day of the murder, he was in that area when Javon told him that he had killed Kiphart. (*Id.*) Gary then drove into the cemetery to see Kiphart's body and helped Javon strip Kiphart's car. (*Id.*) Gary's testimony at Javon's trial was consistent with this statement. (*Id.*) In contrast to its argument in Gary's trial, the Commonwealth encouraged the jury in Javon's trial to believe Gary's testimony, although it acknowledged that Gary had at first lied to the police about his involvement, including his whereabouts on the day of the murder and whether he had seen Kiphart's body. (*Id.*, PageID # 346–47) The Commonwealth also told the jury that Gary's sentence as to his robbery conviction depended on his testimony at Javon's trial. (*Id.*, PageID # 347) Defense counsel questioned Gary "extensively" about his prior inconsistent statements to police and the fact that police found him, not Javon, with Kiphart's car stereo after the murder. (*Id.*, PageID # 348)

The jury found Javon Hearn guilty of murder, first-degree robbery, and tampering with physical evidence. (*Id.*, PageID # 188–90) He agreed to a sentence of life without parole for at least twenty-five years for murder, twenty years for first-degree robbery, and five years for tampering with physical evidence, to run concurrently. (*Id.*, PageID # 191–92; *see id.*, PageID # 193–95) After Javon's trial, the Jefferson Circuit Court granted the Commonwealth's motion and amended Gary's first-degree robbery conviction to receiving stolen property over $300 and his facilitation-to-murder conviction to first-degree hindering prosecution or apprehension. (*Id.*, PageID # 196–99)

On direct appeal, Javon Hearn challenged his conviction, asserting that the inconsistent theories used at the two trials violated due process and that the introduction of an out-of-court identification was unduly suggestive. (*Id.*, PageID # 211–73) The Kentucky Supreme Court

rejected these arguments and upheld his convictions. (*See id.*, PageID # 210, 341–73) The court also found that the Commonwealth's motion to amend Gary's conviction was not discussed with Gary until after the conclusion of Javon's trial. (*Id.*, PageID # 349)

**A.      First Collateral Motion**

In February 2009, Javon Hearn, proceeding pro se, moved the trial court for an evidentiary hearing and to vacate his sentence pursuant to Kentucky Rule of Criminal Procedure 11.42 and Kentucky Rule of Civil Procedure 60.02. (D.N. 16-3, PageID # 375–90) As grounds for his motion, Javon asserted that the Commonwealth engaged in unethical conduct by presenting different theories of the case at the two trials and failing to disclose an agreement with Gary to move to amend his convictions in exchange for his testimony at Javon's trial. (*Id.*, PageID # 384–86) Javon also argued that his trial counsel were ineffective for failing to call his mother and brother as alibi witnesses at his trial. (*Id.*, PageID # 385, 409–11) Finally, he requested the appointment of counsel. (*Id.*, PageID # 389)

The trial court denied Javon's motion, including his request for counsel (*Id.*, PageID # 451–53), but the Kentucky Court of Appeals reversed in part, ordering an evidentiary hearing as to his trial counsel's failure to call the alibi witnesses. (*Id.*, PageID # 517–21) It affirmed the trial court's holding as to Javon's other claims, determining that the claims had previously been heard and rejected by the Kentucky Supreme Court. (*Id.*; *see* D.N. 16-2, PageID # 341–73)

At the evidentiary hearing, Javon's trial counsel testified that Javon's mother and brother could not account for his whereabouts around the time of the murder. (D.N. 16-4, PageID # 567, 620; *see* D.N. 17) Counsel stated that the decision not to call his mother and brother as witnesses was based on their "familiar relationship with [Javon] Hearn and the risk of harmful evidence being elicited on cross-examination." (D.N. 16-4, PageID # 620) Javon's mother, however,

4

testified that she was at home from 10:00 a.m. until she left for school around 3:45 p.m. and did not see Javon leave the house during that time. (*Id.*, PageID # 567, 620–21; *see* D.N. 17) She also stated that she anticipated being called as a witness and sat outside the courtroom during the trial. (D.N. 16-4, PageID # 621; *see* D.N. 17) Javon's brother testified that he arrived at home and played video games with Javon beginning around 3:00 p.m. (D.N. 16-4, PageID # 567, 620–21; *see* D.N. 17) On June 5, 2014, the trial court determined that the testimonies of Javon's trial counsel were more credible than the testimonies of Javon's mother and brother and therefore denied Javon's ineffective-assistance-of-counsel claim. (D.N. 16-4, PageID # 567–68) The Kentucky Court of Appeals affirmed the decision on May 8, 2015, and the Kentucky Supreme Court declined to review that decision. (*Id.*, PageID # 617–23, 657)

**B.     Second Collateral Motion**

On November 22, 2010, and while his first post-conviction motion was pending, Javon, proceeding pro se, moved for another evidentiary hearing pursuant to Kentucky Rule of Civil Procedure 60.02. (*Id.*, PageID # 658–711) He alleged (1) defective jury instructions; (2) improper introduction of a pretrial identification from a photo lineup; (3) insufficient evidence for conviction; (4) non-unanimous verdict in violation of the Kentucky Constitution; (5) a double jeopardy violation resulting from his convictions for murder and robbery; and (6) ineffective assistance of counsel based on trial counsel's failure to object to these purported defects. (*Id.*, PageID # 675–710) The trial court denied Javon's Rule 60.02 motion without an evidentiary hearing on August 19, 2014, determining that the first five grounds for relief could have been raised in either Javon's direct appeal or his previous Rule 11.42 motion but were not. (D.N. 16-5, PageID # 850–57) The court also found Javon's ineffective-assistance-of-counsel claim unsupported on the merits. (*Id.*) The Kentucky Court of Appeals affirmed, holding that the motion

5

was "an improper successive post-judgment motion." (*Id.*, PageID # 907–11) Then, on March 14, 2018, the Kentucky Supreme Court declined to review that decision. (*Id.*, PageID # 932)

**C.     Habeas Corpus Petition**

Javon filed a petition for habeas corpus under 28 U.S.C. § 2254 in this Court on July 25, 2018, and a corrected petition on March 13, 2019. (D.N. 1; D.N. 5-1; *see* D.N. 8) As grounds for his petition, Javon asserted that the Commonwealth improperly used inconsistent theories in his and Gary's trials; the jury verdict form improperly allowed a non-unanimous verdict; his trial counsel rendered ineffective assistance when they failed to call his mother and brother as alibi witnesses; the Commonwealth failed to disclose before Javon's trial the deal with Gary to amend his convictions in exchange for his testimony; and his trial counsel rendered ineffective assistance by failing to object to an improper out-of-court identification. (D.N. 1-1, PageID # 2–54) The Court referred the matter to Magistrate Judge H. Brent Brennenstuhl for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (D.N. 23) Judge Brennenstuhl issued his Findings of Fact, Conclusions of Law, and Recommendation on February 17, 2021, recommending that Javon's corrected petition be denied. (D.N. 24) Following extensions of the deadline, Javon timely objected. (D.N. 29; *see* D.N. 26)

## II.

When reviewing a report and recommendation, the Court reviews de novo "those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). The Court may adopt without review any portion of the report to which no objection is made. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985). Upon review, the Court "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3). Accordingly, the Court

6

will review de novo the portions of Judge Brennenstuhl's recommendation to which Javon objects.³ Javon objects to the magistrate judge's factual findings. (D.N. 29, PageID # 1018) He also objects to Judge Brennenstuhl's conclusions of law on four grounds, asserting that (1) the state improperly used inconsistent theories of the crimes in Javon's and Gary's trials; (2) the jury verdict form improperly allowed a non-unanimous verdict; (3) his trial counsel rendered ineffective assistance when they failed to call Javon's mother and brother as alibi witnesses; and (4) the prosecution failed to disclose prior to Javon's trial the deal with Gary to amend his convictions in exchange for his testimony at Javon's trial. (D.N. 29)

**A.**

A district court "shall entertain an application for a writ of habeas corpus [o]n behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

> An application for a writ of habeas corpus . . . shall not be granted unless it appears that—
> (A) the applicant has exhausted the remedies available in the courts of the State; or
> (B)
>     (i) there is an absence of available State corrective process; or
>     (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

§ 2254(b)(1). "An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented." § 2254(c). "In order to exhaust a claim, the petitioner 'must "fairly present" his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal

---

³ Javon does not object to the magistrate judge's recommendations as to (1) the ineffective-assistance-of-counsel claim for his trial counsel's failure to object to the admission of the out-of-court identification or (2) the certificate of appealability. (*See* D.N. 24; D.N. 29)

nature of the claim.'" *Woolbright v. Crews*, 791 F.3d 628, 631 (6th Cir. 2015) (quoting *Baldwin v. Reese*, 541 U.S. 27, 29 (2004)). "When a petitioner has failed to fairly present his claims to the state courts and no state remedy remains, his claims are considered to be procedurally defaulted." *Id.* "If a petitioner's claims are procedurally defaulted, they may not be reviewed by a habeas court unless he can demonstrate 'cause' and 'prejudice.'" *Id.* (quoting *McMeans v. Brigano*, 228 F.3d 674, 680 (6th Cir. 2000)).

The Antiterrorism and Effective Death Penalty Act (AEDPA), which amended § 2254(d), provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

§ 2254(d). "A state court adjudication is 'contrary to' Supreme Court precedent under § 2254(d)(1) 'if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases' or 'if the state court confronts a set of facts that are materially indistinguishable from a decision [of the Supreme Court] and nevertheless arrives at a [different result].'" *Hill v. Curtin*, 792 F.3d 670, 676 (6th Cir. 2015) (en banc) (alterations in original) (quoting *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003)).

"Under the 'unreasonable application' clause of § 2254(d)(1), habeas relief is available if 'the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case.'" *Id.* (alteration in original) (quoting *Harris v. Haeberlin*, 526 F.3d 903, 909 (6th Cir. 2008)). A petitioner must

8

therefore "show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). "In short, the standard for obtaining federal habeas relief is 'difficult to meet . . . because it was meant to be.'" *Hill*, 792 F.3d at 677 (alteration in original) (quoting *Burt v. Titlow*, 571 U.S. 12, 20 (2013)).

**B.**

**1.     Factual Findings**

Javon Hearn objects to Judge Brennenstuhl's factual findings on the ground that the report and recommendation "omits facts established during post-conviction" proceedings. (D.N. 29, PageID # 1018)  Javon does not identify which facts should have been included in the report and recommendation, however. (*See* D.N. 29)  A general objection to a magistrate judge's report and recommendation is treated as a failure to object, *Cline v. Meyers*, 495 F. App'x 578, 580 (6th Cir. 2012) (citation omitted), and the Court need not review a magistrate judge's findings when no objection has been made. *See Thomas*, 474 U.S. at 150–52. Nevertheless, the Court has reviewed the record and agrees with Judge Brennenstuhl's factual summary, which was taken directly from the Kentucky Supreme Court opinion rejecting Javon's direct appeal. (D.N. 24, PageID # 971–75; *see* D.N. 16-2, PageID # 341–73)  Moreover, the Court has summarized the facts above "as the state courts found them," as it is required to do. *Smith*, 714 F. App'x at 578.

**2.     Inconsistent Theories**

Javon Hearn argued in his petition that the Commonwealth unconstitutionally used inconsistent theories in the two trials. (D.N. 1-1, PageID # 13–23)  Judge Brennenstuhl noted that the state court rejected this argument, and he recommended that the Court deny Javon's corrected

9

petition on this ground. (D.N. 24, PageID # 986–87) Javon objects to this recommendation, arguing that the Commonwealth's use of inconsistent theories violated the Due Process Clause. (D.N. 29, PageID # 1019–22 (citing *Stumpf v. Mitchell*, 367 F.3d 594 (6th Cir. 2004), *rev'd in part, vacated in part sub nom. Bradshaw v. Stumpf*, 545 U.S. 175 (2005)))

As previously explained, Javon must show that the Kentucky Supreme Court's decision was contrary to, or involved an unreasonable application of, clearly established federal law. *See Hill*, 792 F.3d at 676. The Kentucky Supreme Court rejected Javon's inconsistent-theories claim on direct appeal. (D.N. 16-2, PageID # 350) It noted that the Commonwealth's theory in Gary's trial suggested the involvement of Javon in the crimes and therefore was not irreconcilable with the Commonwealth's theory in Javon's trial. (*Id.*, PageID # 350–53) It also found that Gary gave a "more complete statement" between his trial and Javon's trial, making his testimony at Javon's trial more credible than his prior statements to police. (*Id.*) Moreover, it determined that the Commonwealth's motion to amend Gary's convictions reflected his involvement as argued by the Commonwealth at Javon's trial, indicating that the Commonwealth acted in "good faith" by "correct[ing] its use of conflicting theories." (*Id.*, PageID # 350–56)

Javon relies on *Stumpf*, 367 F.3d 594, to support his argument that the Kentucky Supreme Court's decision was contrary to clearly established federal law. (D.N. 29, PageID # 1020–22) In *Stumpf*, the Sixth Circuit held that the prosecution's "irreconcilable" theories of which defendant actually "pulled the trigger" and killed the victim constituted a due process violation. *See* 367 F.3d at 613. But this decision was vacated and remanded because the Supreme Court found that "the precise identity of the triggerman was immaterial to [the petitioner's] conviction." *Bradshaw*, 545 U.S. at 187. Additionally, only Supreme Court, not circuit court, holdings constitute clearly established federal law, rendering *Stumpf* unhelpful as to Javon's petition, even if it had not been

10

vacated. *See Hill*, 792 F.3d at 677 (quoting *Parker v. Matthews*, 567 U.S. 37, 48–49 (2012)). Further, the Kentucky Supreme Court distinguished *Stumpf* in its opinion, determining that the Commonwealth, unlike the prosecution in *Stumpf*, never argued that Gary was the sole triggerman. (D.N. 16-2, PageID # 351–53 ("Unlike *Stumpf*, the Commonwealth did not seek to prosecute both Gary and [Javon] for a crime of which one must be innocent."))

Even if the Court found that the Commonwealth's theories were inconsistent, Javon has not pointed to a Supreme Court case that clearly established a due process violation when a prosecutor presents inconsistent theories (*see* D.N. 1-1; D.N. 26), nor is this Court aware of any such case. *See Bradshaw*, 545 U.S. at 190 (Thomas, J., concurring) ("This Court has never hinted, much less held, that the Due Process Clause prevents a State from prosecuting defendants based on inconsistent theories."); *Burns v. Mays*, 2022 WL 1100896, at *6 (6th Cir. Apr. 13, 2022) (noting that even if the government's witnesses testified inconsistently at related criminal trials, "mere inconsistencies in testimony by government witnesses do not establish knowing use of false testimony" (quoting *United States v. Lochmondy*, 890 F.2d 817, 822 (6th Cir. 1989)) (internal quotation marks omitted)); *Stumpf v. Robinson*, 722 F.3d 739, 750 (6th Cir. 2013) (en banc) ("The mere fact that the State argued for different inferences in different cases does not make either argument so unfair that it violates the Due Process Clause."). Javon has therefore failed to show that the state-court decision was contrary to, or an unreasonable application of, federal law. *See Hill*, 792 F.3d at 676. For these reasons, the Court will overrule Javon's second objection.

### 3. Jury Instructions

Javon Hearn also contended that he was denied a unanimous verdict in violation of the Kentucky Constitution because the jury instructions allowed for a conviction of intentional or wanton murder and his trial counsel failed to object to these allegedly defective instructions. (D.N.

11

1-1, PageID # 23–28) Judge Brennenstuhl determined that this claim was procedurally barred. (D.N. 24, PageID # 987–92) Javon objects, asserting that his failure to raise this claim was due to ineffective assistance of appellate counsel on direct appeal and his status as a pro se litigant on his initial post-conviction motion. (D.N. 29, PageID # 1022–23)

On Javon's second post-conviction motion pursuant to Kentucky Rule of Civil Procedure 60.02, he asserted that the jury instructions were improper and that his trial counsel were ineffective for failing to object to the instructions. (*See* D.N. 16-4, PageID # 664–65, 690–710) The state court rejected his improper-jury-instructions claim as procedurally barred, finding that the issue could have been raised in his initial post-conviction motion or on direct appeal. (D.N. 16-5, PageID # 851) The court rejected Javon's ineffective-assistance-of-counsel claim on the merits under Kentucky Supreme Court precedent (*see* D.N. 16-5, PageID # 853–54), discussed *infra* Section II.B.3.b. The Kentucky Court of Appeals affirmed, determining that Javon's motion was "an improper successive post-judgment motion." (D.N. 16-5, PageID # 910–11)

      **a.    Procedural Default**

As previously discussed, if a petitioner's claim is procedurally defaulted, it "may not be reviewed by a habeas court unless he can demonstrate 'cause' and 'prejudice.'" *Woolbright*, 791 F.3d at 631 (quoting *McMeans*, 228 F.3d at 680). Javon objects to the magistrate judge's finding that this claim is procedurally barred, arguing that ineffective assistance of appellate counsel on direct appeal and his pro se status during his initial collateral proceeding constitute "cause." (D.N. 29, PageID # 1022–23; *see* D.N. 1-1, PageID # 27 (citing *Martinez v. Ryan*, 566 U.S. 1 (2012)))

Even assuming that Javon could establish cause for his procedural default, however, he cannot show "actual prejudice." *Ambrose v. Booker*, 684 F.3d 638, 649 (6th Cir. 2012). To ascertain whether "actual prejudice" exists, the Court must "look to the record to determine if the

12

outcome *of the trial* would have been different." *Jones v. Bell*, 801 F.3d 556, 563 (6th Cir. 2015) (citing *Ambrose*, 684 F.3d at 652). "The 'most important aspect to the inquiry is the strength of the case against the defendant' and whether a trial without errors would still have resulted in *conviction*." *Id.* (quoting *Ambrose*, 684 F.3d at 652); *see Kennedy v. Mackie*, 639 F. App'x 285, 295 (6th Cir. 2016) (noting that even a structural error that would create an automatic right to a new trial does not satisfy "actual prejudice" if the "*actual* and *eventual* outcome of the *trial*" would not have been different (quoting *Jones*, 801 F.3d at 564)).

Javon has not argued, much less shown, that the outcome of his trial would have been different had his trial counsel objected to the jury instructions. (*See* D.N. 1-1, PageID # 24–28; D.N. 29, PageID # 1022–23) Without a showing that the "actual outcome" at trial would have been different but for the alleged error, Javon cannot establish actual prejudice. *See Jones*, 801 F.3d at 563. Accordingly, he has not made the requisite showing to excuse his procedural default. *Id.*

### b. Merits

Even if Javon Hearn were able to excuse his procedural default, his claim would fail on the merits. *See id.* at 564. As explained above, a petitioner may obtain habeas relief by establishing that the state-court determination (1) "'resulted in a decision that was contrary to . . . clearly established Federal law, as determined by the Supreme Court'; or (2) involved an 'unreasonable application of' the same." *Id.* (alteration in original) (quoting § 2254(d)(1)). To warrant relief, Javon must show that the jury instructions at his trial were "so infirm that they rendered the entire trial fundamentally unfair." *Coe v. Bell*, 161 F.3d 320, 329 (6th Cir. 1998) (citing *Estelle v. McGuire*, 502 U.S. 62, 72 (1991)). "It is not enough that the instruction was 'undesirable, erroneous, or even "universally condemned."'" *Ambrose v. Romanowski*, 621 F. App'x 808, 813

13

(6th Cir. 2015) (quoting *Estelle*, 502 U.S. at 72). Javon's burden in making this showing "is even greater than that required to demonstrate plain error on appeal." *Wheeler v. Simpson*, 852 F.3d 509, 519 (6th Cir. 2017) (quoting *Buell v. Mitchell*, 274 F.3d 337, 355 (6th Cir. 2001)) (internal quotation marks omitted).

Javon acknowledges (D.N. 1-1, PageID # 25) that he cannot obtain habeas relief by arguing that he was entitled to a unanimous verdict in state court under the United States Constitution at the time of his conviction. *See Edwards v. Vannoy*, 141 S. Ct. 1547, 1554 (2021) (determining that the unanimous-verdict requirement outlined in *Ramos v. Louisiana*, 140 S. Ct. 1390 (2020), does not apply retroactively to overturn final state-court convictions on federal collateral review). Additionally, Javon does not argue that the jury instructions at his trial were "so infirm that they rendered the entire trial fundamentally unfair." *Coe*, 161 F.3d at 329; *see Ambrose*, 621 F. App'x at 813. Javon instead contends that the jury instructions resulted in a non-unanimous verdict in violation of the Kentucky Constitution. (D.N. 1-1, PageID # 24–26; D.N. 29, PageID # 1023 (citing *Keith v. Commonwealth*, No. 2014-SC-000568-MR, 2016 WL 671711 (Ky. Feb. 18, 2016))) But the fact that jury instructions are "allegedly incorrect under state law is not a basis for habeas relief." *Estelle*, 502 U.S. at 71–72 (citing *Marshall v. Lonberger*, 459 U.S. 422, 438 n.6 (1983)); *Ambrose*, 621 F. App'x at 813. Javon has therefore failed to show that the state court's determination was contrary to, or an unreasonable application of, clearly established federal law. *See Estelle*, 502 U.S. at 71–72; *Coe*, 161 F.3d at 329.

As to Javon's ineffective-assistance-of-counsel claim for his counsel's failure to object to these instructions, he must prove that his trial counsel's representation "fell below an objective standard of reasonableness" and that the deficient performance prejudiced the outcome of the trial. *Strickland v. Washington*, 466 U.S. 688 (1984). The state court rejected Javon's claim, finding

14

that his trial counsel was not ineffective for failing to object to the jury instructions. (D.N. 16-5, PageID # 853–54) In his petition, Javon merely states the *Strickland* standard. (D.N. 1-1, PageID # 27) Without more, he has not shown that state court's rejection of his claim was contrary to, or an unreasonable application of, clearly established federal law. *See Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) ("[B]ecause the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard."). Accordingly, the Court will overrule Javon's third objection.

**4.     Alibi Witnesses**

Javon Hearn additionally asserted ineffective assistance of counsel based on his trial counsel's failure to call his mother and brother as alibi witnesses. (D.N. 1-1, PageID # 28–45 (citing *Strickland*, 466 U.S. 688)) Judge Brennenstuhl determined that Javon failed to establish that the state court erroneously applied *Strickland*. (D.N. 24, PageID # 995–99) Javon objects to this finding, arguing that his trial counsel failed to investigate potential alibi witnesses, in violation of *Strickland*. (D.N. 29, PageID # 1023–25)

Javon raised this ineffective-assistance claim on his first post-conviction motion. (*See* D.N. 16-3, PageID # 385, 409–11) The trial court initially rejected his claim, but upon remand by the Kentucky Court of Appeals, it held an evidentiary hearing as to Javon's trial counsel's failure to call his mother and brother as alibi witnesses. (D.N. 16-4, PageID # 567–68; *see* D.N. 16-3, PageID # 517–21) At the hearing, trial counsel testified that neither Javon's mother nor his brother could verify Javon's whereabouts around the time of the murder. (D.N. 16-4, PageID # 620; *see* D.N. 17) Counsel therefore decided not to call either individual as a witness. (D.N. 16-4, PageID # 620; *see* D.N. 17) According to Javon's mother, however, she was at home from 10:00 am until 3:45 p.m. on the day of the murder, which occurred between noon and 1 p.m., and never saw Javon

15

leave the house. (D.N. 16-4, PageID # 620–21; *see* D.N. 17) Javon's brother testified that he was home with Javon beginning around 3:00 p.m. the same day. (D.N. 16-4, PageID # 621; *see* D.N. 17) The trial court ultimately denied Javon's claim, determining that the testimonies of Javon's trial counsel were more credible than those of Javon's mother and brother. (D.N. 16-4, PageID # 567–68) The Court of Appeals affirmed, and the Kentucky Supreme Court declined to review the decision. (*Id.*, PageID # 617–23, 657)

As previously explained, to obtain habeas relief on his ineffective-assistance-of-counsel claim, Javon Hearn must prove that his trial counsel's representation "fell below an objective standard of reasonableness" and that the deficient performance prejudiced the outcome of the trial. *Strickland*, 466 U.S. at 688–89. In denying Javon's claim, the Kentucky Court of Appeals applied *Strickland* and noted that although counsel were required to make a reasonable investigation into potential alibi witnesses, witness selection is generally left to trial counsel's discretion. (D.N. 16-4, PageID # 622–23) The Kentucky Court of Appeals deferred to the trial court's finding as to the witnesses' credibility and determined that Javon could not show that his counsel's decision not to call his mother and brother as witnesses constituted ineffective assistance under *Strickland*. (*Id.*)

Javon contends that the state court's decision "rest[ed] upon an unreasonable determination of the facts and is contrary to federal law." (D.N. 29, PageID # 1025) In addressing Javon's claim, the Kentucky Court of Appeals correctly acknowledged (D.N. 16-4, PageID # 622–23) that Javon's counsel had a duty to make a reasonable investigation into potential alibi witnesses. *See Stewart v. Wolfenbarger*, 468 F.3d 338, 355–61 (6th Cir. 2006). The court concluded that trial counsel did reasonably investigate Javon's alibi, as one of his counsel discussed the alibi with Javon's mother and brother and found that neither potential witness could corroborate it. (D.N. 16-4, PageID # 622–23; *see* D.N. 17) Javon has not pointed to a Supreme Court case that is

contrary to this finding or that has "materially indistinguishable" facts. *See Hill*, 792 F.3d at 676. In light of the state court's determination that Javon's counsel investigated his alleged alibi, the Kentucky Court of Appeals did not unreasonably apply *Strickland* in rejecting Javon's claim. *See Smith*, 714 F. App'x at 578–79 (affirming denial of habeas relief when petitioner's trial counsel did not call potential alibi witnesses when the witnesses "could not say for certain" where petitioner was at the time of the crime); *Stadler v. Berghuis*, 483 F. App'x 173, 176–77 (6th Cir. 2012) (rejecting petitioner's habeas claim when trial counsel did not call petitioner's mother as an alibi witness because, according to counsel, the witness could not verify that the date of the crime coincided with the alleged alibi); *cf. Poindexter v. Booker*, 301 F. App'x 522, 527–31 (6th Cir. 2008) (affirming grant of habeas relief when trial counsel was aware of four witnesses who would corroborate petitioner's alibi yet failed to call them at trial). Because a federal court's review of an ineffective-assistance-of-counsel claim under § 2254(d) is "highly deferential," the Court will overrule Javon's fourth objection. *Stadler*, 483 F. App'x at 177 (quoting *Cullen*, 563 U.S. at 190) (internal quotation marks omitted).

### 5.   *Brady* Violation

Javon Hearn asserted that the prosecution failed to disclose the deal with Gary regarding his testimony at Javon's trial, in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). (D.N. 1-1, PageID # 45–51) Hart responded that this claim was procedurally barred and, alternatively, failed on the merits. (D.N. 16, PageID # 168–74) Judge Brennenstuhl determined that the Commonwealth's agreement to move to amend Gary's conviction was discussed with Gary only after Javon's trial. (D.N. 24, PageID # 986–87) Javon objects to Judge Brennenstuhl's conclusion, reasserting that Gary's deal with the Commonwealth was not disclosed prior to Javon's trial, resulting in a *Brady* violation. (D.N. 29, PageID # 1025–26) Neither Javon nor Hart objects to

17

Judge Brennenstuhl's conclusion that Javon's claim was not procedurally barred. (*See* D.N. 24, PageID # 986–87)

"The suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 U.S. at 87. "A successful *Brady* claim requires a three-part showing: (1) that the evidence in question be favorable; (2) that the state suppressed the relevant evidence, either purposefully or inadvertently; (3) and that the state's actions resulted in prejudice." *Bell v. Bell*, 512 F.3d 223, 231 (6th Cir. 2008) (en banc) (citing *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999)).

After Gary's conviction, the trial court sentenced him to five years each as to facilitation to murder and tampering with physical evidence, to be served consecutively. (D.N. 16-2, PageID # 345) As to Gary's first-degree robbery conviction, the Commonwealth agreed to a ten-year sentence, to run concurrently with his other two sentences, in exchange for Gary's testimony at Javon's trial. (*Id.*, PageID # 345–46) Javon does not contest that the Commonwealth disclosed the terms of this agreement before his trial. (*See* D.N. 1-1; D.N. 29; *see also* D.N. 16-2, PageID # 347–48) Rather, he argues that the Commonwealth failed to disclose that in exchange for Gary's testimony at Javon's trial, the Commonwealth would also move to amend Gary's conviction. (D.N. 1-1, PageID # 45–51; D.N. 29, PageID # 1025–26)

The prosecution must "disclose all exculpatory and impeachment evidence that is in the government's possession 'in time for use at trial.'" *United States v. Smith*, 749 F.3d 465, 492 (6th Cir. 2014) (quoting *United States v. Presser*, 844 F.2d 1275, 1283 (6th Cir. 1988)). This includes "any favorable evidence known to others acting *on the government's behalf* in the case." *Id.* (quoting *United States v. Graham*, 484 F.3d 413, 417 (6th Cir. 2007)) (internal quotation marks

omitted). The prosecution has no duty to disclose information obtained after trial, however. *See Graham*, 484 F.3d at 417 ("*Brady* clearly does not impose an affirmative duty upon the government to take action to discover information which it does not possess."). And in this case, the Kentucky Supreme Court found that while the Commonwealth did move to amend Gary's conviction after Javon's trial, the motion "went beyond the Commonwealth's obligation" under the original agreement with Gary. (D.N. 16-2, PageID # 348–49; *see* D.N. 16-2, PageID # 196–99)

Javon maintains that it "defies belief that the prosecutors never conceived of this favorable treatment, or promised it to Gary, until after . . . Javon's trial." (D.N. 29, PageID # 1026) And "unwritten or tacit agreement[s]" are "subject to *Brady*'s disclosure mandate." *Bell*, 512 F.3d at 233 (citing *Wisehart v. Davis*, 408 F.3d 321, 323–24 (7th Cir. 2005)). But Javon has not offered any evidence showing that the Commonwealth and Gary "reached a mutual understanding" before Javon's trial as to the amendment of Gary's conviction. *Id.* A mere allegation is insufficient to satisfy his burden to establish a *Brady* violation. *See id.* at 231–34. Moreover, even if Javon could demonstrate that Gary expected additional favorable treatment after his testimony, "[a] witness's expectation of a future benefit is not determinative of the question of whether a tacit agreement subject to disclosure existed." *Id.* at 233 (quoting *Wisehart*, 408 F.3d at 325). Further, Javon has failed to show that the Kentucky courts "arrive[d] at a [legal] conclusion opposite to that reached by th[e] [Supreme] Court," "decide[d] a case differently than th[e] [Supreme] Court" on similar facts, or "identifie[d] the correct governing legal principle from th[e] [Supreme] Court's decisions but unreasonably applie[d] [it] to the facts." *See Williams v. Taylor*, 529 U.S. 362, 412–13 (2000). The Court will therefore overrule Javon's final objection. *See Bell*, 512 F.3d at 231–34 (denying

19

habeas relief when petitioner did not show that a government witness entered into a favorable agreement with the prosecution before his testimony at petitioner's trial).

### III.

Javon Hearn has not demonstrated that the state courts' decisions were contrary to or involved an unreasonable application of clearly established federal law, or that they were based on an unreasonable determination of the facts in light of the evidence presented. *See* § 2254(d). Accordingly, and the Court being otherwise sufficiently advised, it is hereby

**ORDERED** as follows:

(1)  The Findings of Fact, Conclusions of Law, and Recommendation of Magistrate Judge H. Brent Brennenstuhl (D.N. 24) are **ADOPTED** and **INCORPORATED** herein.

(2)  Javon Hearn's objection to the magistrate judge's recommendation (D.N. 29) is **OVERRULED**.

(3)  A separate judgment will be entered this date.

May 3, 2022

David J. Hale, Judge
United States District Court